IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| EDDIE PLAYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 00-PWG-2113-W |
| | ) |
| CADET KEVIN JONES, | ) |
| | ) |
| Defendant. | ) |

**ENTERED**

**JAN 31 2002**

MEMORANDUM OF DECISION

On July 23, 2001 the undersigned magistrate judge entered a report pursuant to the provisions of 28 U.S.C. § 636(b) in which it was recommended that defendant Kevin Jones's motion for summary judgment on qualified immunity grounds be denied and that the Eighth Amendment excessive force claim of plaintiff, Mr. Eddie Player be heard before a United States District Judge and jury. (Document #18). The district judge referred the case to the magistrate judge for pretrial proceedings. After receiving pretrial narrative statements from both plaintiff and defendant the magistrate judge conducted a telephone conference with counsel to the defendant and with Mr. Player. Following that conference at Mr. Player's request, the court requested that Mr. Scott Linton, a member of the bar of this court, assist Mr. Player in the presentation of his case. (Document #26). The trial was scheduled for January 22, 2002 before United States District Judge Edwin L. Nelson. Prior to the jury selection, Mr. Player withdrew his jury demand and elected to consent to the jurisdiction of the United States Magistrate Judge in accord with the provisions of the 28 U.S.C. § 636(c). Defendant Kevin Jones agreed in the withdrawal of the jury demand and also consented to dispositive jurisdiction of the magistrate judge. Testifying at trial were Mr. Kevin Jones, Mr. Eddie

33

Player, Mr. Willie Bennett, Mr. Willie Finch and Ms. Cassandra Carlton. After consideration of the evidence applicable law, judgment for defendant Kevin Jones will enter.

## SUMMARY OF THE TESTIMONY

Kevin Jones

Mr. Jones testified that on July 18, 2000 he was a cadet trainee employee of the Department of Corrections at the Bibb County Correctional Facility.[1] On July 18 Mr. Jones had been employed for approximately one month. Mr. Jones testified that he was assigned to accompany Corrections Officer II Cassandra Carlton. Jones was with Carlton when she entered the A-Dorm lobby on July 18. Mr. Eddie Player was in the lobby killing flies with a fly-swatter. According to Mr. Jones, Officer Carlton told Mr. Player to get a broom and sweep the lobby. Mr. Jones stated that Mr. Player became verbally abusive and raised his right hand making gestures toward Carlton as if he was going to strike her. Mr. Jones, who had never before met Mr. Player, reported hearing Mr. Player state "I ain't going no where. I ain't doing s - - t." Mr. Jones observed other inmates watching the confrontation between Player and Carlton through the plexiglass which separated the dorms from the lobby. Jones testified that at least one of the dorms, A-3, was unlocked and open to the lobby. Mr. Player walked away from Carlton into the dorm ostensively to obtain a broom. Officer Carlton, believing the confrontation to be over, left the immediate area and entered a restroom. Cadet Officer Jones remained in the lobby. Mr. Player then returned from the dorm area without a broom. Jones asked Player why he did not have a broom and Player again began to shout and gesture. Jones recalled him saying "I ain't doing s - - t" and "I'll kick both ya'lls a - -." Cadet Officer Jones, who had received little formal training as a corrections officer, has observed other officers remove a belligerent inmate from the view of other inmates in order to

---

[1] Mr. Jones is no longer employed by the Department of Corrections. He returned to the state for trial.

diffuse a potentially dangerous situation. Jones saw other inmates "gathering around" the plexiglass. Jones testified that he then asked Mr. Player to step into the "ice room," a relatively large closet with a steel door containing an ice machine and a small desk. Jones stated that his intention was to get out of the view of the gathering inmates. Jones testified that Player walked into the ice room but turned and swung at Jones with his right hand, hitting Jones on the left side of the face. Jones, who had been a three-state golden gloves champion, hit Player twice in the face. Jones stated that he struck Player to defend himself. He testified that he and Player "tussled." Jones stated that he ended up on top of Mr. Player, chest-to-chest. Jones stated he was sitting on Mr. Player when other officers entered the ice room and handcuffed Mr. Player. Both Mr. Player and Jones were taken to the infirmary. Mr. Jones wrote a report of the incident. In the report Mr. Jones stated that he would write a disciplinary action for violation of Rule 29, Assault on Persons Associated With the Department of Corrections.

      Mr. Jones stated cadet officers wore uniforms which were slightly different from those of regular corrections officers. He also testified that as a cadet he did not carry a baton, handcuffs, mace, or a radio. Mr. Jones stated that he had been instructed to stay away from confrontations with inmates if at all possible but to defend himself if attacked. On cross-examination Mr. Jones stated that he had never had a complaint made about him by an inmate, nor had there been a finding of unfounded complaints against any inmates initiated by him.

Cassandra Carlton

      Corrections Officer Cassandra Carlton[2] testified that when she saw inmate Eddie Player killing flies in the lobby she asked him to get a broom to sweep the area. Carlton, an eleven

---

[2]    Now, Sergeant Carlton.

year veteran with the Department of Corrections on July 18, 2000 stated that Mr. Player began "cursing" and telling her "I ain't doing s - - t," and "make me do it," "you go get the broom." Acknowledging that she could have "written him up," Officer Carlton verbally reprimanded Mr. Player and told him to either sweep or go back to the dorm.[3] She stated that despite her experience as a corrections officer she felt threatened by Player because he was very loud and very hostile. As a veteran corrections officer, Officer Carlton stated that she definitely did not feel threatened each time an inmate cursed or argued with her but that she felt threatened by Mr. Player.

Despite her concerns, Officer Carlton left the area when Mr. Player entered the dorm. She stated that when she left the restroom, she heard noises of a struggle. She went to the ice room where she saw Mr. Player and Mr. Jones on the floor. She stated that Mr. Jones was on top of Player and that she believed Mr. Jones was sitting on Mr. Player's back with his knee in the plaintiff's back. Almost immediately Officer Carlton told the cubicle officer to call a "code red." The alarm brought other officers to the ice room.

Eddie Player

Mr. Player, now an inmate at the Staton Correctional Facility, stated that on July 18, 2000 he was in the lobby of A-Dorm killing flies. He also stated that he and Officer Carlton frequently joked with each other and that they were joking on that day. Mr. Player stated that he was going to clean up the lobby for Officer Carlton despite anything to the contrary he may have said. He stated that when he left the lobby area to find a broom, he found the broom was in use. When he returned without the broom, Mr. Player testified that Mr. Jones said to him "you think you're bad." Mr. Player testified that Mr. Jones said "I'm going to get the key from the cubicle

---

[3] Mr. Player does not have a significant history of institutional disciplinary proceedings. His only serious disciplinary was for "assault" more than fifteen years ago.

4

officer to the ice room and teach you a lesson." Player testified that Jones obtained the key from the cubicle and opened the ice room. Player said he was told to enter the ice room. According to Mr. Player, once inside the ice room Mr. Jones told Player to drop the fly swatter. Mr. Player stated that when he dropped the fly swatter he was struck in the mouth with a hand-held radio which Jones carried. Player testified that he was hit three or four times with the radio. He stated that he then grabbed Jones and that the men wrestled each other to the ground. Mr. Player testified that he had been cut on the inside of his mouth and suffered injuries to his teeth. Mr. Player stated that stitches were used to close the cut inside his mouth on July 18.

Mr. Player acknowledged that eleven days before the July 18 incident he had been charged with a prison contraband disciplinary. He also acknowledged that a disciplinary hearing to consider the charge was scheduled for July 22, 2000. Prior to the contraband incident, Mr. Player had been "an outside" work release inmate; that is, he was permitted to leave the prison camp in order to perform duties in the "free world." While he acknowledged that he would face the disciplinary proceeding, he denied that he believed he would be removed from work release.

Willie Bennett

Mr. Willie Bennett, a sergeant with the Department of Corrections, testified that on July 18, 2000 he received a "code red" indicating an officer needed immediate assistance. He stated that it took approximately thirty to sixty seconds for him to reach the ice room where Jones and Player were struggling. Mr. Bennett observed Jones and Player holding each other. Mr. Bennett told Player to stop struggling. Bennett put his weight on Mr. Player in order to handcuff him. Mr. Bennett believed that the code red had been called by the cubicle officer, a female officer by the name of Hurt.

<u>Willie Finch</u>

Mr. Willie Finch, a sergeant with the Department of Corrections for more than nineteen years, stated that cadet officers were assigned to regular officers and told to observe how to perform their duties. He also stated that cadet officers, like regular corrections officers, are told to avoid confrontations if at all possible but, if an altercation occurred, a cadet like another officer was required to "protect himself." Finch also stated that the ice room at A-Dorm was sometimes locked and sometimes unlocked. He stated that proper procedure for any corrections officer is to subdue an inmate who is attacking the officer and then call for assistance.

APPLICABLE LAW

As more fully set out in the earlier recommendation in this action, the Eighth Amendment prohibits cruel and unusual punishment which includes subjecting a prisoner to "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "Whenever prison officials stand accused of using excessive physical force in violation of the cruel and unusual punishments clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*: whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 501 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The court reasoned that

> "'many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "...[p]rison administrators ... should be accorded

6

>wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

( *Id.*, citations omitted).

Relevant factors in assessing the use of force include (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the prison official; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injuries suffered by the inmate. ( *Id.* at 7-8).

As the plaintiff in this action, it is Mr. Player's burden to prove every essential part of his claim by a "preponderance of the evidence." To satisfy the standard of preponderance of the evidence, Mr. Player must produce sufficient evidence to persuade the finder of fact that his claim is more likely true than not true. The finder of fact, whether a jury or judicial officer, may consider the testimony of all witnesses without regard to which party may have called that witness and all exhibits received in evidence. If Mr. Player fails to establish any essential part of his claim by preponderance of the evidence the defendant must prevail.[4]

While it is true that a de minimus use of force does not violate the Eighth Amendment, the teachings of *Hudson v. McMillan* make clear that the threshold requirement for the use of force is that the use of force was necessary. In *Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir. 1997), *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997), and *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994), the Eleventh Circuit

---

[4] In a non-jury trial when faced with two plausible, logical versions of events, the interpretation of the judge may not be reversed unless clearly erroneous. The findings must be sustained even if an appellate court is convinced it would have weighed the evidence differently. That legal principle increases rather than decreases the duty of the court to carefully consider all evidence and applicable burdens. *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 478 (1985).

7

applied the principle of de minimus force in concluding that the use of such force is constitutionally permissible. On the other hand, as *Hudson* clearly states, the use of force merely to "teach a lesson" is unconstitutional even if the victim does not suffer a "serious injury." "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7.

As a matter of law, the differing factual versions of the events of July 18, 2000 cannot be reconciled. If Mr. Jones used force to defend himself against an attack by Mr. Player, his response is clearly constitutionally permissible. In the event that Mr. Jones directed Mr. Player into the ice room for the purpose of administering a beating in order to avenge Officer Carlton or to prevent Player from engaging in such conduct, the Eighth Amendment has been violated.

## FINDINGS OF FACT

Mr. Player has failed to prove that his version of the events of July 18, 2000 are more likely than not true. This conclusion is reached after consideration of all of the evidence including photographs, diagrams and the testimony of all witnesses. As a result of that analysis and consideration the court makes the following findings of fact:

1. On July 18, 2000 Eddie Player verbally abused and defied Corrections Officer Cassandra Carlton by refusing to sweep the lobby area of A-Dorm.

2. Cassandra Carlton believed Mr. Player's conduct to be both abusive and threatening.

3. Mr. Player continued to defy Officer Carlton's orders by returning to the lobby area without a broom.[5]

---

[5] Officer Carlton testified that she gave Player a choice of returning to the dorm or sweeping the lobby. He was not given an choice of returning to the lobby without sweeping the area.

4. Cadet Officer Kevin Jones saw other inmates observing Player's defiance of both officers.

5. Cadet Officer Jones, consistent with his training through observation of other officers, attempted to remove Mr. Player from the line of sight of other inmates by asking Player to go to the ice room.

6. When Player entered the ice room followed by Jones, Player became physically assaultive by striking Jones.[6/]

7. Cadet Jones struck Mr. Player two or more times and wrestled him to the ground.

8. Prior to entering the ice room, Jones did not leave Mr. Player in order to obtain a key to ice room.

9. Contrary to his complaint, Mr. Player was not summoned to the lobby area over the intercom.

10. Cadet Jones did not have a radio in his hand when he struck Mr. Player.

11. Mr. Player was not assaulted, struck or otherwise physically abused by any other corrections officer.

## CONCLUSION

After consideration of the evidence and applicable law in light of the court's duty to find the facts as well as apply the appropriate standard, judgment for defendant Kevin Jones will enter. See *Childrey v. Bennett*, 997 F.2d 830, 832 (11th Cir. 1993).

---

[6/] The medical record of Mr. Jones did not reflect a visible "injury." The record, however, also reflects that Mr. Jones reported that he had been struck presumably by Mr. Player despite the fact that the skin was not broken.

The clerk is DIRECTED to serve a copy of this Memorandum of Decision upon Mr. Eddie Player at Staton Correctional Facility, Mr. Scott Linton (for information only) and Mr. William F. Addison, counsel to the Department of Corrections.

As to the foregoing it is SO ORDERED this the 31st day of January, 2002.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE